UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

R.M. Bacon, LLC and Michael Bacon,

                Plaintiffs

  - v -

SAINT-GOBAIN PERFORMANCE PLASTICS
CORP., and HONEYWELL INTERNATIONAL
INC. f/k/a ALLIED-SIGNAL INC.,

                Defendants.

-------------------------------------------------------------------x

Case Number: 17-cv-441 (LEK/DJS)

**AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs, by and through their attorneys, as and for its complaint against Defendants, allege as follows:

## **INTRODUCTION**

1.     R.M. Bacon, LLC ("R.M. Bacon" or Company) is one of the direct and immediate victims of defendants' systematic contamination of the local aquifer. Defendants' actions, in short, have caused the collapse of a 30-year old local business.

2.     Defendants released PFOA into the environment causing a widespread contamination of the underlying aquifer and the classification of the location as a State Superfund site.

3.     Town officials have also sought classification of the area as a federal Superfund site. As an EPA official recognized at a public meeting in 2016, the contamination in the groundwater, resulting in a Superfund designation, will have substantial long-term economic consequences.

4.      The State of New York has identified Saint-Gobain Performance Plastics Corp. (Saint-Gobain) and Allied Signal Inc., now doing business as Honeywell International Inc. (Allied-Signal), as two of the parties, if not the only parties, potentially responsible for the contamination of the groundwater in Hoosick Falls.   Collectively, Saint-Gobain and Allied-Signal are referred to throughout this pleading as "Defendants."

5.      Defendants, in whole or in part, contaminated the aquifer beneath Hoosick Falls with PFOA.

6.      The PFOA contamination within the local water supply has had a direct and adverse economic impact on plaintiffs R.M. Bacon, LLC and Michael Bacon.

## PARTIES

7.      Plaintiff R.M. Bacon is a New York corporation located at 510 South Street, Hoosick Falls, New York.

8.      Plaintiff Michael Bacon mailing address is P.O. Box 136, Hoosick Falls, New York and he resides at 669 South Street, Hoosick Falls, New York.

9.      Defendant Saint-Gobain Performance Plastics Corporation is a foreign company with its principal executive office located at 750 East Swedesford Road, Valley Forge, Pennsylvania.

10.     Saint-Gobain is a Paris-based multinational corporation with more than 350 years of engineered materials expertise.   Saint-Gobain is one of the top 100 largest industrial companies in the world with € 43.2 billion in sales and 193,000 employees in 64 countries. Saint-Gobain employs approximately 1,200 people in New York.

11.    Saint-Gobain is the world's leading producer of engineered, high-performance polymer products, serving virtually every major industry across the globe. Saint-Gobain businesses support these key industries in bringing advanced technology polymer products and using them in the most demanding applications.

12.    Defendant Honeywell International (Honeywell), f/k/a Allied-Signal Inc., is a foreign corporation with its principle executive office located at 115 Tabor Road, Morris Plains, New Jersey.

13.    Honeywell is a Fortune 100 company with a global workforce of approximately 130,000. It serves a variety of industries, including the specialty chemicals industry.

14.    In 1999, Allied-Signal Inc. acquired Honeywell.  The combined company adopted Honeywell's name, however, because of superior name recognition.

15.    Allied-Signal was an aerospace, automotive, and engineering company that was created through the 1985 merger of Allied Corp. and Signal Companies.   Together, these companies had operated in the United States since at least the early 1920s.  Prior to the merger, a significant portion of Allied Corp.'s business was concerned with the chemical industry.

16.    Defendants, at various times relevant herein, and as described more fully below, operated a manufacturing facility at or around 14 McCaffrey Street, Hoosick Falls, New York. Defendants also operated a facility at 1 Liberty Street, Hoosick Falls and defendant Honeywell operated facilities at John Street and River Road in Hoosick Falls.

## JURISDICTION AND VENUE

17.     Jurisdiction is proper in this Court due to diversity of citizenship, pursuant to 28 U.S.C. § 1332(a), because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because Defendant Saint-Gobain conducts substantial business in this District, and has caused harm to the plaintiff, who resides in this District.

## GENERAL FACTUAL ALLEGATIONS

**Background Regarding PFOA**

19.     PFOA is a man-made chemical not found in nature.

20.     Minnesota Mining and Manufacturing Company (3M) is the original manufacturer of PFOA.

21.     A number of other companies have manufactured PFOA within the United States. Those companies include Arkema, Asahi, BASF Corp., Clariant, Daikin, DuPont and Solvay Solexis.

22.     PFOA is a perfluoroalkyl carboxylate that is produced synthetically as a salt.

23.     Companies utilized PFOA for a number of uses; indeed, it was a key component in the manufacturing of Teflon.

24.     Companies also used PFOA to make fabrics water and stain resistant.

25.     For example, PFOA was used in the production of Gore-Tex.

26.     PFOA has been identified as an emerging contaminant of concern.

27.     PFOA has the potential to be more of a health concern because it can stay in the environment and in the human body for long periods of time.

28.     In 2009, the EPA issued a provisional health advisory for PFOA at 0.40 ppb.  The provisional health advisory states that the discovery of PFOA in water above the advisory level should result in the discontinued use of the water for drinking or cooking.

29.     The EPA issued a new provisional health advisory for PFOA on May 19, 2016, based on the agency's review of the best available peer-reviewed studies.  In the new health advisory, the EPA established a lifetime limit of 70 ppt or 0.07 ppb for PFOA (and PFOS).

30.     The EPA noted that peer-reviewed studies indicate that "exposure to PFOA over certain levels may result in adverse health effects, including developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."

**PFOA Use in the McCaffrey Street Facility**

31.     The New York State Department of Health (DOH) has identified a small factory at 14 McCaffrey Street in Hoosick Falls as a probable source for the presence of PFOA in the municipal water supply and local aquifer.

32.     Indeed, the State has designated the facility as a "significant threat to public health or the environment."

33.     The facility on McCaffrey Street began operation in or about 1955, and Dodge Fiber owned and operated the factory at that time.

34.     Dodge Fiber sold the facility to Oak Industries in 1967, which in turn sold the facility to Allied-Signal in 1986.

35.     Allied-Signal sold the facility to Furon Company (Furon) in 1997, and, most recently, Saint-Gobain purchased the facility in or around 1999. Saint-Gobain remains the owner and operator of the McCaffrey plant.

36.     Upon information and belief, throughout the Oak Industries, Allied-Signal and Furon ownership of the McCaffrey facility, each company manufactured stain and water resistant fabric at the factory.

37.     Upon information and belief, Saint-Gobain continued to manufacture water and stain resistant fabric at the McCaffrey facility from its purchase of the factory until approximately 2004.

38.     Throughout this period, upon information and belief, each company utilized PFOA in the manufacturing of stain resistant fabric.

39.     Allied-Signal also made pressure-sensitive tapes, Teflon-coated fabrics, and Teflon sheet, tape and laminates while it owned the McCaffrey plant.

40.     Saint-Gobain also utilized PFOA in other processes at the McCaffrey facility between, upon information and belief, 1999 and approximately 2004.

41.     Generally, Saint-Gobain's 190-employee Hoosick Falls operation produces PTFE (polytetrafluoroethylene) film, adhesive tapes and silicone rubber for aeronautical, automotive, food processing and energy applications.

42.     Upon information and belief, defendants discharged PFOA into the environment through other means that will be revealed through the discovery process.  It is that defendants are responsible for multiple release points within five to ten miles of the McCaffrey Plant.

43.     Defendants discharged PFOA into the environment through releases into the atmosphere.  Stacks at the McCaffrey plant discharged PFOA particles into the air and those particulates were carried into the general area around the plant and onto the properties throughout Hoosick Falls.

44.     The New York State Department of Environment Conservation (DEC), based on testing it conducted, informed plaintiffs that measurable levels of PFOA exist on the 510 South Street property.  Upon information and belief, the PFOA reached the property from air emissions released from the McCaffrey Street plant.

45.     Defendants also discharged wastewater containing PFOA directly into the environment through discharges into the soil.

46.     It is possible, if not probable, that defendants also followed waste disposal practices that resulted in the discharge or burial of PFOA-ladened waste in the municipal landfill and one or more other locations around the community.

47.     Other defendant-connected sources of PFOA contamination may exist within the community.

48.     For example, the DEC, as part of the State's Superfund Program, has also opened investigations for a facility on John Street that was the Oak Materials Fluorglas Division ("John St. Site") and the Oak Materials Site on River Road ("Oak Materials Site").  Defendant Honeywell has entered into an Order on Consent and Administrative Settlement with the DEC. That Order suggests that the John St. Site and the Oak Materials Site may have also contributed to or otherwise caused the PFOA contamination of the environment.

49.     The DEC is also currently investigating Defendant Saint-Gobain's Liberty Street site as a potential source of contamination.

7

50.     On June 19, 2017, the DEC informed the public of certain test results at various locations connected with defendants.  Groundwater test results at the McCaffrey Street site (44 samples) averaged 7,686 ppt with a high of 130,000 ppt.  Groundwater test results at the Liberty Street site (9 samples) averaged 6,671 ppt with a high of 48,000 ppt.  Groundwater test results at the John Street site (63 samples) averaged 1,596 ppt with a high of 6,400 ppt.  The DEC also found other volatile organic compounds at the John Street location.   DEC testing found trichloroethylene (TCE) and 1,1,1-trichloroethane (111-TCA) in the soil with respective highs of 420,000 parts per billion (ppb) and 88,000 ppb.

51.     The DEC has identified the Allied Signal (Honeywell) site on Mechanic Street, Hoosick Falls, as another possible contamination source.

52.     Further, the DEC has identified the municipal landfill for the Village of Hoosick Falls a potential state Superfund site.  Preliminary investigations of the landfill have resulted in the discovery of PFOA within the landfill and testing of monitoring wells on site has resulted in the discovery of PFOA levels at 21,000 ppt.

**Public Awareness and Disclosure of Contamination**

53.     The Village of Hoosick Falls has a population of approximately 3,501 individuals.

54.      The Village of Hoosick Falls operates and maintains the municipal water system.

55.     The Village's municipal water system has approximately 1,300 service connections.  The Village estimates that its system provides water to nearly 95 percent of the Village's residents.

56.     On November 25, 2015, the EPA contacted the Village and recommended the use of an alternative drinking water source and that residents not use the municipal water for drinking and cooking due to the presence of PFOA in the municipal water system.

57.     The EPA repeated its recommendation to the Village on December 17.

58.     Shortly after this date, Saint-Gobain began providing free bottled water to citizens of Hoosick Falls.   Near this time, Saint-Gobain also agreed to fund the installation of a granulated activated carbon filter system on the municipal water system to remove PFOA from drinking water.

59.     On January 14, 2016, Healthy Hoosick Water sponsored a public meeting with personnel from the EPA, the DOH and New York State Department of Environmental Conservation (DEC).

60.     At that meeting, New York officials announced that New York State had submitted a letter that day seeking the designation of Hoosick Falls as a federal Superfund site.

61.     EPA officials acknowledged in that meeting that a Superfund designation would have an adverse economic impact on properties in Hoosick Falls area.

62.     Governor Cuomo directed state agencies on January 27, 2016, to use State Superfund money to address PFOA in the Hoosick Falls' municipal water system.   The State Health Commissioner said that the Saint-Gobain plant would be deemed a state Superfund site and designated it a Class 2 site.

63.     At this time, one or more local banks indicated that they would not advance funds for a mortgage for the purchase or refinancing of a home in Hoosick Falls.  Indeed, the Treasurer of Trustco Bank, Kevin Timmons, publicly confirmed that the bank was not writing new

mortgages for any home on the Village's municipal water supply.  Timmons indicated that lenders typically require that homes have access to potable water before financing is approved.

64.     Timmons further stated that financing would not be approved for homes on private wells until the water supply was tested for the presence of PFOAs.

65.     Testing has identified PFOA in numerous private wells in the area as well.

66.     As a result of the presence of PFOA within the aquifer, the municipal water system and private wells, the property values within Hoosick Falls have experienced a significant decline.

67.     Further, the economic development of the Village has largely ceased.

68.     The Planning Board, for example, has considered very few proposals at their monthly meetings.  Indeed, the December 2016 meeting was canceled as no one had submitted any proposals to the Board for consideration that month.

69.     At the present time, the public is generally aware of the substantial contamination of the local groundwater from PFOA with the McCaffrey Street facility and defendants being responsible for the contamination.

70.     The public is also generally aware that the DEC overseen blood testing of local residents has uncovered incredibly high levels of PFOA in blood of many local community members.  That testing reveals that most residents have PFOA in their blood well in excess of the national average.

71.     This general knowledge has created a population that is understandably fearful of its long-term health, as PFOA is a known carcinogen and causes additional health problems as well.  As a result, people are reluctant to undertake property development.

72.     Although the June 1, 2016 Consent Order called for the release of a Remedial Investigation and Feasibility Study (RI/FS) within thirty days, the investigating company has not yet released the RI/FS as of March 1, 2017.

73.     It is anticipated that the federal government will name the McCaffrey Street facility and related disposal areas as a federal Superfund Site within the next few months.

74.     It is also anticipated that the full remediation of PFOA from the local aquifer, if it is required at all, will require over five years of effort.

**Plaintiff R.M. Bacon – Neighborhood Business for 30+ Years**

75.     Michael Bacon formed R.M. Bacon, LLC ("R.M. Bacon") in 1985.

76.     R.M. Bacon is located in the Town of Hoosick, immediately south of Hoosick Falls.

77.     Mr. Bacon grew up in Hoosick Falls and is a graduate of its high school.

78.     The origins of the Company pre-date 1985, when Mr. Bacon purchased a dump truck during high school to begin a business delivering fill, gravel and other materials to customers.

79.     The business has expanded over the years and through 2015, R.M. Bacon's primary operations centered on custom home construction and home improvements.

80.     For that work, the Company served as the general contractor, performing parts of the work and overseeing the work of sub-contractors.

81.     R.M. Bacon also performed excavations, deck installation, provided soil and fill to home owners, putting in roads on properties, leased out construction equipment and handled

the storm maintenance work in the region (i.e., removed down trees, plowed roads and other related services).

82.     In developing the business, R.M. Bacon made a number of infrastructure commitments that set the business apart from other companies in the immediate region.  For example, the Company built an all-season facility with independent power to insure operations when regional storms cause power outages (indeed, Mr. Bacon makes his building available to area residents who have lost power so that they can get a hot shower or use the power for immediate, small needs).

83.     The Company has an additional building, which it constructed to protect equipment and to perform in-house maintenance on equipment.  In these capacities, R.M. Bacon also provided employment for residents of Hoosick Falls.

84.     The Company has also made significant expenditures for its own equipment, such as the purchase of a screen plant to insure the quality of the soil and other fill.

85.     R.M. Bacon expanded over time to become a company with over $1 million in annual revenues.

86.     R.M. Bacon's efforts and Mr. Bacon's connections within the community made the business the leading construction company in an approximate 25-mile radius of Hoosick Falls.

87.     The Company, essentially, performed all excavation and roadway development work for all new commercial construction in the area between 2010 and 2015.

88.     Similarly, the Company provided approximately 75 percent of this work for all private property development in the area through 2015.

89.     R.M. Bacon, accordingly, has been the primary business in its field in the area for over a decade.  Given the relative size of towns such as Hoosick and Hoosick Falls, R.M. Bacon was the first choice (and, frequently, only choice) for excavation and related work in the area.

**Defendants' Destruction of Plaintiff's Business**

90.     The confirmation of the presence of PFOA in the groundwater in Hoosick Falls and the EPA's direction that residents no longer use tap or well water for drinking and cooking had a direct impact on the business operations of R.M. Bacon.

91.     The absence of safe water for the residents in Hoosick Falls immediately negatively impacted residents' confidence in the safety of their homes.

92.     Individuals and companies in Hoosick Falls lost the ability to get loans for the development or improvement of their properties as banks anticipated a sharp decline in property values.

93.     Individuals were informed that their properties had lost value.

94.     Hoosick Falls residents became further concerned that any improvement to the property would become lost value as property values continued to decline due to the PFOA presence.

95.     The resulting declaration of locations within the Village of Hoosick Falls as state Superfund sites further depressed property values and further reduced interest in property development in the area.

96.     The New York State Department of Health's disclosure of test results for blood samples taken of local residents, revealing a significantly higher-than-average presence of PFOA in the blood of local residents, further negatively impacted property values.

97.     People suddenly became distrustful of even the fill that R.M. Bacon provided, though it came from a different area, as they anticipated that the fill might contain PFOA.

98.     The type of work that the Company previously performed disappeared in 2016, as a result of the announced presence of PFOA in the local groundwater.

99.     For example, in 2015, R.M. Bacon performed excavating and construction work on a log cabin situated on an 800-acre property.

100.    The owner of the property had intended to continue developing the property in 2016, as he worked towards a goal of developing the property into a horse farm and vacation spot.  With the announcement of PFOA in the groundwater and the declaration of the area as a State Superfund site, the owner cancelled the development of the property.

101.    While the Company had employed seven individuals for the previous five years, it was only employing three individuals by June 2016, along with one part-time employee.

102.    R.M. Bacon had no construction or excavation work scheduled at the start of July 2016.

103.    The Company performed a minimal amount of excavation work during the summer of 2016.

104.    R.M. Bacon had previously obtained a low-interest, small business loan from the Department of Agriculture (USDA) and applied to the USDA for permission to make only interest payments for the next year to relieve some of the financial pressure on the Company. The USDA did provide small relief on the terms of the loan.  That relief ended in 2017.

105.    As of July 1, 2016, the company had no new contracts for 2016, and did not anticipate any new contracts for land development or road work for the remainder of the year.

106.   In August, the company opted to schedule an auction for the sale of most of its equipment as a means of reducing overhead and costs.  That auction took place on October 11, 2016.

107.   By September 2016, Mike Bacon was the only remaining employee of R.M. Bacon and he was not receiving a regular salary for that work.

108.   In October 2016, the Company sold several more pieces of large equipment at auction.

109.   Individuals have expressly stated that the presence of PFOA in the environment prevents them from hiring R.M. Bacon.

110.   As of December 31, 2016, no one had contacted R.M. Bacon for a work estimate, let alone to perform construction work for either the winter of 2016-17, or for 2017.

111.   As of December 31, 2016, the company experienced a substantial loss of revenue for the 2016 fiscal year.

112.   Plaintiff Michael Bacon holds the title for the property where R.M. Bacon operates on South Street in the Town of Hoosick, including the surrounding 90+ acres.

113.   Michael Bacon  sought to sell the property in 2016, and has listed the property at $100,000 below the 2015 assessed value of the property and buildings for the past six months.

114.   To date, plaintiff Michael Bacon has not received any offers for the property and no one has looked at the property.

115.   R.M. Bacon anticipates that it will require five years for the company to return to the revenue levels that it enjoyed between 2010 and 2015, and that will occur only if something is done to address the presence of PFOA's in the groundwater and confidence is restored in the community.

116.   A better-than-average chance also exists, however, that the consequences of the environmental contamination from PFOA will force the 31-year old company to cease operation during 2017.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**Negligent Interference with Prospective Economic Advantage**

**(R.M. Bacon alone)**

117.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

118.   Plaintiff R.M. Bacon, in November 2015, had existing economic relationships with individuals and companies to perform work during 2016.

119.   Based on prior years' experience, Plaintiff would have developed additional economic relationships with individuals and companies in 2016 and beyond.

120.   Plaintiff's position and reputation within the community produced other relationships that would have resulted in anticipated property work during 2016 and beyond.

121.   As R.M. Bacon was the primary company in the region providing excavation and leveling work, along with other work for property development, defendants knew or should have known of plaintiff's economic relationships within the community and plaintiff's leading role in the region for such services.

122.   Defendants' conduct caused the release of PFOA into the environment.  Those releases included, but are not limited to, direct discharges into soil, discharge through air emissions, and disposal at various locations around the community.

123.   Defendants failed to exercise reasonable care in their handling of their manufacturing operations and associated waste disposals.

124.   Defendants' actions disregarded federal and state law and disregarded industry practices for handling waste, including PFOA.

125.   At all relevant times, defendants were aware of the health, safety and environmental threats that PFOA presented and of the potential consequences if they mishandled their waste and discharges in an unsafe manner.

126.   Defendants knew or should have known that use of PFOA and/or the discharge of PFOA was potentially hazardous to human health and the environment and required Defendants to take adequate safety precautions to ensure that PFOA was not released into the surrounding environment.

127.   As a result of defendants' actions, they have substantially contaminated the local environment, including the underlying aquifer, with PFOA.

128.   Defendants' contamination of the environment has disrupted plaintiff's economic relationship with existing and future customers and the local community.

129.   As a result, R.M. Bacon lost existing and future economic relationships, resulting in substantial economic losses in 2016 and beyond.

130.   Defendants' wrongful conduct constitutes the primary, if not sole, cause of the harm that plaintiff has incurred.

131.   Plaintiff, additionally, is entitled to punitive damages as a result of defendants' egregious actions.

## SECOND CLAIM FOR RELIEF

### Intentional Interference with Economic Relationship

### (R.M. Bacon alone)

132.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

133.   Plaintiff R.M. Bacon, in November 2015, had existing economic relationships with individuals and companies to perform work during 2016.

134.   Based on prior years' experience, Plaintiff would have developed additional economic relationships with individuals and companies in 2016 and beyond.

135.   Plaintiff's position and reputation within the community produced other relationships that would have resulted in anticipated property work during 2016 and beyond.

136.   As R.M. Bacon was the primary company in the region providing excavation and leveling work, along with other work for property development, defendants knew of plaintiff's economic relationships within the community and plaintiff's leading role in the region for such services.

137.   Defendants' conduct caused the release of PFOA into the environment.  Those releases included, but are not limited to, direct discharges into soil, discharge through air emissions, and disposal at various locations around the community.

138.   Defendants failed to exercise reasonable care in their handling of their manufacturing operations and associated waste disposals.

139.   Defendants' actions disregarded federal and state law and disregarded industry practices for handling waste, including PFOA.

140.    At all relevant times, defendants were aware of the health, safety and environmental threats that PFOA presented and of the potential consequences if they mishandled their waste and discharges in an unsafe and hazardous manner.

141.    Defendants knew or should have known that use of PFOA and/or the discharge of PFOA was potentially hazardous to human health and the environment and required Defendants to take adequate safety precautions to ensure that PFOA was not released into the surrounding environment.

142.    Further, defendants deliberately withheld information about their handling of waste containing PFOA.  Additionally, defendant St. Gobain withheld knowledge of community-wide contamination of the groundwater with PFOA from the McCaffrey Street facility, in direct disregard for the economic relationships of Plaintiff within the community, as well as the health and safety of the community.

143.    As a result of defendants' actions, they have substantially contaminated the local environment, including the underlying aquifer, with PFOA.

144.    Defendants' contamination of the environment has disrupted plaintiff's economic relationship with existing customers and the local community.

145.    As a result, R.M. Bacon lost existing economic relationships and future economic relationships as well and resulting in annual losses of $750,000 or more for the foreseeable future.

146.    Defendants' wrongful conduct constitute the primary, if not sole, cause of the harm that plaintiff has incurred.

147.    Plaintiff, additionally, is entitled to punitive damages as a result of defendants' egregious actions.

### THIRD CLAIM FOR RELIEF

**Tortious Interference with Business Relationship**

**(R.M. Bacon)**

148.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

149.   Plaintiff R.M. Bacon has a series of ongoing business relationships with various companies in and around Hoosick Falls.

150.   Those relationships include work with Pro-Builders Construction Co. (Hoosick Falls), Hathaway Electric Inc. (Bennington, VT), Man of Kent Tavern (Hoosick Falls), JMP Foundation, Inc., T-Masonry & Building Services (Hoosick Falls), Nate Case Remodeling and other businesses within the region.

151.   Defendants' contamination of the environment has interfered with plaintiff's existing business relationships and ability to obtain work with those companies.

152.   Defendants' contamination of the environment, through both the discharge to the ground and releases into the atmosphere, was in reckless or willful disregard of their obligation to safely and properly manage and dispose of defendants' waste products from their manufacturing operations.

153.   Defendants' acts and their consequences adversely impacted plaintiff's business relationship with the identified businesses and other, similar businesses through the elimination of the work that plaintiff had performed in the past.

154.   As a result, R.M. Bacon lost existing business relationships resulting in substantial economic losses in 2016 and beyond.

155.    Defendants' wrongful conduct constitutes the primary, if not sole, cause of the harm that plaintiff has incurred.

156.    Plaintiff, additionally, is entitled to punitive damages as a result of defendants' egregious actions.

## FOURTH CLAIM FOR RELIEF

### Negligence

157.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

158.    Defendants knew or should have known that use of PFOA and/or the discharge of PFOA was potentially hazardous to human health and the environment and required Defendants to take adequate safety precautions to ensure that PFOA was not released into the surrounding environment.

159.    Despite this knowledge, defendants discharged PFOA, as part of its waste stream, into the air, into the soil and into general, municipal waste disposal sites.  Upon information and belief, defendants may have also encouraged (or turned a blind eye to) the dumping of waste material and waste fluids containing PFOA at various locations within a five to ten mile radius of the facility.

160.    Defendants through their acts and omissions permitted PFOA to enter the environment and substantially contaminate the groundwater in Hoosick Falls.

161.    Defendants through their acts and omissions permitted PFOA to be dispersed throughout the environment resulting in the presence on the property where the Company is located and conducts certain operations.

162.    Defendants had a duty to take all reasonable measures to ensure that PFOA Solution would be effectively contained and not discharged into the surrounding environment.

163.    Defendants further had a duty to ensure that the manufacturing processes they chose to employ did not unreasonably endanger the drinking water relied upon by residents of Hoosick Falls and the surrounding area.

164.    Defendants had a further duty, once the release of PFOA into the environment was discovered, to immediately and diligently investigate and address in order to stop the release of the Contaminants.

165.    Defendants breached the above-stated duties by unreasonably disposing of PFOA in a manner that guaranteed that PFOA would enter the environment, including the groundwater.

166.    Defendants' breach of their duty caused economic conditions to collapse in Hoosick Falls and a resulting collapse in the business operations of R.M. Bacon.  Due solely to defendants' breach of their duty, no property development occurred in the Village during 2016 and plaintiff was injured.

167.    Defendants' contamination of the environment has also stigmatized the local community and will adversely impact development in the community for the foreseeable future.

168.    As a direct and proximate result of defendants' actions and omissions described herein, plaintiff R.M. Bacon has lost revenues of approximately $1,000,000 for 2016, as well as the ownership of equipment.  Plaintiff anticipates that these injuries will continue in 2017 and beyond.

169.    As a direct and proximate result of Defendants' actions and omissions described herein, plaintiff Michael Bacon's property has also diminished in value and lost approximately $250,000 of its value.

170.    R.M. Bacon and Michael Bacon, accordingly, seeks damages in an amount to be determined by a jury, but which will meet or exceed $2,400,000.

## FIFTH CLAIM FOR RELIEF

### Negligence Per Se

171.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

172.    Defendants' acts and omissions violate multiple federal and state statutes and regulations.

173.    These statutes create a duty that defendants owed to all members of the community for the proper handling, management and disposal of chemicals or hazardous waste and protected the members of the community from any individual, entity or corporation from polluting the local environment.  Federal and New York State laws and regulations expressly prohibit or carefully manage the release or discharge of contaminants into the environment.

174.    Defendants' actions include the disposal of PFOA without the proper authorization and the release of PFOA into the environment, including discharges into the neighboring soil and air emissions into the general vicinity.

175.    As a result of Defendants' actions, PFOA is present on the Plaintiff's property.

176.    By way of example, defendants have violated New York State Environmental Conservation laws §§ 17-0501, 27-0914 and 37-0107.

177.    Defendants, in releasing PFOA into the atmosphere, have violated New York laws and regulations, including 6 NYCRR § 200.6 and 6 NYCRR § 211.1.

178.   Violations of statutory provisions and regulatory obligations constitute negligence per se.

179.   Defendants' violations have interfered and adversely impacted R.M. Bacon's operations and business opportunities.

180.   Defendants' failure to adequately manage, handle or oversee the disposal of its waste containing PFOA, and in particular to prevent a massive release of PFOA into the environment, and subsequent failure to contain that release, amounts to an extreme departure from what a reasonably careful person would do in the same situation to prevent harm to others.

181.   Defendants knew or should have known that the haphazard and indiscriminate discharge of waste containing PFOA into the environment posed a threat of significant danger to the environment and to the health and well-being of the nearby community and residents of the Village of Hoosick Falls.

182.   Defendants' contamination of the environment has also stigmatized the local community and will adversely impact development in the community for the foreseeable future.

183.   As a direct and proximate result of defendants' actions and omissions described herein, plaintiff R.M. Bacon has lost revenues of approximately $1,000,000 for 2016, as well as the ownership of equipment.  Plaintiff anticipates that these injuries will continue in 2017 and beyond.

184.   As a direct and proximate result of Defendants' actions and omissions described herein, plaintiff Michael Bacon's property has also diminished in value and lost approximately $250,000 of its value.

185.   Plaintiffs, accordingly, seek damages from defendants in an amount that a jury shall determine but will be no less than $2,400,000.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

## PRAYER FOR RELIEF

Plaintiffs request that the Court enter judgment in their favor and against defendants, awarding as follows:

1.  Actual, general, special, incidental, statutory, compensatory, and consequential damages in an amount to be proven at trial, but which will meet or exceed $2,400,000;

2.  Punitive and exemplary damages due to defendants' malice detailed above;

3.  All costs including reasonable attorneys' fees, court costs, and other litigation expenses;

4.  Pre and post-judgment interest

5.  All such other relief as the Court deems just and proper.

Dated: July 14, 2017
New York, New York

Respectfully submitted,

*/s/ William A. Walsh*

William A. Walsh, Esq.
NDNY Bar Roll #519925
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, New York 10003
Telephone: (212) 558-5500
Facsimile: (212) 344-5461
Email:  wwalsh@weitzlux.com

John K. Powers, Esq.
USDC NDNY Bar Roll #102384
**POWERS & SANTOLA, LLP**
39 North Pearl Street
Albany, New York 12207
Telephone: (518) 465-5995
Facsimile: (518) 426-4012
E-mail: jpowers@powers-santola.com

*Attorneys for Plaintiffs*